May it please the Court, my name is Ed Finkley, I'm with the law firm Cable Houston, and I represent Wah Chang in the action, Wah Chang v. Duke Reliant in TransAlta. I would like to reserve five minutes for my rebuttal. Your Honor, we represent Wah Chang in actions against Duke Reliant in TransAlta alleging violations of state and federal antitrust laws, the Racketeering Influence and Corrupt Organizations Act, and the wrongful interference with contract. They are both state and federal claims. I am counsel on behalf of Wah Chang in the three actions, and the counsel for Wah Chang and the other actions has ceded time to me today in the interest of efficiency. Wah Chang had a very unique retail contract for the purchase of electricity during the energy crisis. The retail price that Wah Chang paid to its utility, Pacificor, was tied directly to the Dow Jones California-Oregon Border Index price. The contract was not with any of the defendants, but with Wah Chang's serving utility in Oregon. The Dow Cob was freely chosen by Wah Chang and Pacificor as a proxy price for the power that Wah Chang would be purchasing. That is central to how our suit differs from the others that have been dismissed in earlier decisions by this Court. Unlike other cases, we are not challenging the wholesale transactions between our utility and the defendants. Why, in a nutshell, isn't what you're seeking the functional equivalent of that, however? Your Honor, because the nature of the way we purchased power was so different than how normal transactions occurred. We tied the price that we would pay our utility to this indexed price. So whatever happened to the index happened to our power price. We, in bringing these claims, are not under the Federal Power Act. We weren't a wholesale purchaser. Well, I know you're sort of talking around the practical question that I'm asking. And that is, in order to prove damages, assuming you could establish liability, in order to prove damages, is it practical matter, why isn't what you're seeking, why wouldn't the proof of damages in effect be the functional equivalent of saying the prices that, say, the utility would be paying, would be the price that the utility would be paying? Because the way our contract was structured, the Court could reach a damage calculation without trying to substitute the Court's judgment for how the wholesale price should have been set. How? How? We were purchasing under this special contract. The alternative would have been to have been purchasing under a standard retail tariff of Pacific Corp. And So you're just explaining around my question, which is pretty precise. And that is, what damages could be proved that would not implicate the reasonableness of the prices approved by FERC that resulted in the index? Because, Your Honor, for example, in our wrongful interference with contract claim, we believe that one of the measures of damage would be to put us back in the position we would have been in had we not been purchasing at the Dow Cop. Yes. And that would be a way to measure damages that wouldn't involve that. No, that's a theory of damages. But the measure of damages, why wouldn't the measure of damages be precisely the same as a claim that the prices were unreasonable to that extent? Because the Court wouldn't have to recalculate what happened in these wholesale transactions to reach a damage calculation. It could use the retail tariff of Pacific Corp. We also suffered consequential damages. What consequential damages did you suffer? We shut down production at one point. So the making of the metal products that my client makes in Albany, Oregon, became unprofitable, and they simply shut down production for part of the energy crisis. They also went out and bought their own energy generating unit to try to self-generate their way through the crisis. And both of those types of damages have nothing to do with attempting to recalculate what went on at the California-Oregon border. And then, of course, we believe that the state claim on wrongful interference with contract can be calculated with a price that does not involve any FERC-related prices. It simply would put us back in a situation that we would have been in had the contract not been formed. And in that case, you would use a retail price that is a published price that we'd have to go back to the tariffs from that time frame. But Pacific Corp. had a retail price for its standard industrial service. But how do you get anywhere at all until you first show that the FERC prices charged were wrong? If they were right, if they were correct, if they were the FERC-approved rates, then how do you get anything in terms of damages out of it? Your Honor, I think... I know you can say, well, yeah, I didn't like those rates. Those rates were too high for me, so I bought a generator. That's not the point, because the first step to the argument is those rates were too high for me. Well, the first point in our claims won't be that the rates were too high, because we were not a wholesale purchaser. Our claim will be that the defendants... That sounds unduly scholastic to me. Say again? That sounds unduly scholastic to me, because if I understood the basis of your complaint, it was that you were having, in effect, you were having those wholesale rates passed on to you. Is that not right? They weren't being passed on to us. That was what was so funny about... I'll readily admit we had a very funny contract. We tied our price to the Dow Cobb Index, so it wasn't as if Pacificor, like in some of the other cases that have gone before us, purchased the power and then passed the expensive power on to us. Pacificor may or may not even have purchased any of this power. They may have been serving us with their own generated power, but we, in this special contract, had chosen the Dow Cobb as our index. But the reason you say these people are responsible is that the rates they were charging were too high. Is that not correct? No, we would not be going into any accusations about that. How did the Dow get its numbers? The bottom line is you're saying that they're responsible because the rates were too high. I just don't see how one avoids that. I can hear what you're saying, but I just don't understand that. Well, we think that it's fundamentally different to say that the... ...and said, we're going to charge a zillion dollars a kilowatt hour. And Ferg said, fine. And that influences all kinds of things, and so you're having to pay probably a zillion plus kilowatt hour, right? Correct. And you want to sue them now and say, that's too high. Well, the basis of our claim, I believe that's exactly where Snohomish and Grays Harbor were, is that then they, because they were wholesale purchasers, they would have had to have gone into essentially that the rates were not just and reasonable. It doesn't matter to our claims whether the rates were just and reasonable. What will matter is whether or not the defendants restrained trade, violated the antitrust laws, or wrongfully interfered with our contract. We don't believe we're... Yeah, but the problem is, suppose they did. I mean, suppose they did interfere with your contract. Suppose they did violate the antitrust laws, and suppose that they were real snakes who ran afoul of RECA. In order to show that you had damage, how can you show it without showing that the rates were excessive? Well, we wouldn't, it wouldn't matter to us whether the rates were excessive in the sense of whether they were... Because what you paid was more than what you should have paid, right? We, what we paid was more than it would have been if the defendants hadn't engaged in the unlawful conduct. Yes, and the unlawful conduct was getting together, was manipulating the market, was lying, cheating, stealing, doing all sorts of bad things. But at the end of the day, having established that they're bad guys, at the end of the day, you're saying, you owe me money, and what you owe me is the difference between what I should have paid and what I did pay, right? I mean, what other, how else do you prove damages in a buy-sell situation? I guess the way we look at it is it's the, it's the how you get to the what you should have paid. What you should have paid in the previous cases, all, because they were federal transactions, all would have centered, as you're noting, would have centered on what those FERC rates were. Because we are outside of a Federal Power Act claim, we are a retail customer, and we're not simply talking about a pass-through of expensive power to us. But the index, how is the index arrived at? What does the index mean? The index, like many published indexes, those who report transactions to Dow Jones get added up in a day and divided by however many were reported, and that becomes yesterday's price. So the index reflects the rates that, say, Duke Energy charged? Correct. So, same question, how can you, how can you show that the price that you paid based on the index is anything other than the price that Duke Energy set, which is what, is the FERC price? Well, we believe that because of the nature of the actions that we're bringing, that we have to be able to, if we can establish that the claims are correct, that so long as there is a way to measure damages that doesn't simply borrow from the Federal Energy Regulatory Commission, that we are different. And we believe that difference is a very real difference. All right. I have a different question. In the brief, you throw away a request for leave to amend if the court were to agree with the district court's dismissal, but without sort of developing the point. So if the dismissal were appropriate, why do you think you should have leave to amend? Put differently, what additional different factual allegations would you make were you given leave to amend? They would go primarily to the consequential damages suffered as a result of the defendant's actions, so that we would be able to elaborate on that, exactly how the loss production occurred, exactly what actions Wanchain took to essentially self-help its way through the situation by purchasing the generator. We did believe that the court below could have allowed us and should have allowed us to amend on those basis. The consequential damages are where the amending would be most necessary. The cases that have gone before us, the ones that we believe we are the most like, there's a Power X case that was decided by your district court. And our claims, because our claims do not rely on proving violations of either the Federal Power Act or any of the FERC tariffs, that we are like that Power X case. And in addition to the claims, our contract was grounded in retail, in a retail contract, not a wholesale contract. And in Snohomish and Grays Harbor, the court was very concerned that because those plaintiffs were purchasing under FERC regulated prices, that because their claims fell right within the Federal Power Act and the nature of their transaction fell within the Power Act. We don't, and we find ourselves essentially, if the antitrust laws are not available to us, we find ourselves in a world where there doesn't seem to be any remedy. Because we're not a wholesale purchaser from any of these entities. So the FERC could very logically say, well, you know, you're not a wholesaler like Snohomish. And at the retail level, this is the index that we chose. And as long as it hadn't been manipulated, it would have been our attempt to have what we wanted at the time, which was market-based power. And we trusted that the Val Cobb Index would be a fair reflection of the power trades at the California-Oregon border. And we had every reason to assume that the entities trading there were subject to the antitrust laws. My concern with the defendant's argument is that they appear to be trying to take Dinergy and Gray's Harbor and turn what has been a bar on claims into essentially an immunity from the antitrust laws for those who trade in the wholesale markets. We may have been the one plaintiff nobody thought was out there, but we were out there. And we suffered damages very differently than other retail customers on the West Coast because of the way we chose in the 90s to purchase our power indexed to this Val Cobb. So if the defendants violated the antitrust laws in the course of their energy trading during the power crisis, we believe that Huaqiang is the one company that these entities are liable to. They knew or should have known that there were retail market-based contracts out there. The Cobb Index was intended to reflect a real competitive market. In real competitive markets, actors are liable for violating state and federal antitrust laws, as well as RICO or wrongfully interfering with contracts. The Dinergy case and that progeny have not made those trades into trades that are immune from the antitrust laws. And that's how I read the defendants trying to take Dinergy and apply it to our case, is that then we find ourselves in a world where there's an immunity from the antitrust laws. And we do not believe that that was the intent of the cases that have gone before us. And if you want to save some time. Yes, Your Honor. Yes, I have a ‑‑ I was going to reserve five minutes. Well, you're down to three. Down to three. I'll save the rest. Thank you, Your Honor. Good morning. My name is Gordon Erspommer, and I represent parties to both of the underlying cases, the Transalta defendants in the Duke case, and I represent the IdaCorp, Inc., Idaho Power Company defendants in the Huacheng v. Avista case. The outcome of this appeal, and I'd like to make five basic points and organize my argument around the five basic points. The outcome of this appeal is controlled by a series of prior Supreme Court and Ninth Circuit cases holding that wholesale markets, including conduct and prices, are exclusively within FERC's domain. Two, the flaw in Huacheng's analysis is contrary to these cases to focus on the status of the plaintiff, this is a retail argument, rather than on the nature of the allegations in the complaint. Huacheng expressly and repeatedly in the complaint alleges transactions that occurred in interstate commerce no less than 17 times, one of the critical issues under 201B of the Federal Power Act, and also alleges that all the conduct that they complain about occurred in wholesale power markets, the second basis for Federal jurisdiction under 201B. Three, the Ninth Circuit and Supreme Court have repeatedly held, under their preemption and foul rate doctrine cases, that those doctrines bar claims by end users or which involve retail transactions, and there are a whole series of cases we've cited to that effect. Four, and this is the point Judge Reimer, I think, questions go to, Huacheng's complaint expressly alleges that the wholesale prices increased both at Cobb and throughout the West as a result of defendant's conspiracy, causing the Cobb index price to increase. Therefore, in order to calculate damages, the court would have to recalculate the wholesale transaction prices factored into the Cobb index, which would clearly violate the foul rate doctrine and the market-based authority of the individual defendants, as well as the WSPP tariff and other FERC tariffs. Five, the creation of a new retail exception, and there are cases now that hold that way, would create an anomalous situation where all the direct purchasers of power from wholesalers would be barred, but indirect purchasers who are merely alleged of retail relationship would not be barred. And I think the court would need to think through very long and hard about the implications of that because it could potentially turn every retail customer in the western states into a plaintiff in cases against the wholesalers and in cases in which the direct purchasers would be barred. I have a question on the effect of the index, or your point that you would have to recalculate the prices that went into the index. I'm sorry, I can't remember precisely when, but at some point FERC, in effect, did that. I mean, it went into the Cal, in terms of the California market, it set what a fair price would have been, absent the market manipulation. Why isn't that figure a sufficient one to avoid the problem of recalculating rates? There are several answers to that question. First of all, that is not the appropriate way to measure damages in a case that alleges that the Cobb index price was too high. I think you would have to analyze the measure of the underlying transactions and the prices in those underlying transactions in order to come up with damages. But there are two additional reasons. But the argument would be that FERC did just that itself by virtue of going, of setting what would have been a reasonable rate. Okay. That is not what FERC did, actually, because what FERC did is in the process now of resetting the transactional prices in the California spot market that were tied to the auction, which was administered by the PX and the ISO. Rather, in the Pacific Northwest transactions underlying Cobb are bilateral transactions. They're not in the centralized market. And FERC expressly ruled in the Pacific Northwest proceeding, now on appeal to this court, that they could not use the NMCP from California as a measure of damages for the Pacific Northwest, and that refunds to the Pacific Northwest would not apply. Last reason, this court, I guess I have to refer to the district court decision because it was an unpublished opinion in the Port of Seattle case. But this court affirmed the determination in that case that it was inappropriate to use the NMCP as a measure of damages in an index case. That particular case, Port of Seattle, involved a different index, not the Cobb index. It involved the Mid-C, Mid-Columbia index.  And, in fact, in a motion to stay this case, followed by Wah Chang, it itself recognized the importance of that Port of Seattle case and the Snohomish case in its motion. And this motion was filed on June 15, 2004, in which they said, quote, the issues to be resolved in Port of Seattle and Snohomish are relevant to the disposition of this appeal. And they asked the court to stay this case pending the resolution of both Snohomish and Port of Seattle, both of which were ultimately resolved against the plaintiffs that were similarly situated to Wah Chang. But all the authorities that we've cited, and there's just a considerable number of them, and a considerable number of those authorities on this question of filed rate do involve retail buyers or classes of retail buyers, the most important of which was the County of Stanislaus case, which was a case, it was a gaming case, gaming allegations about pipeline access and stuffing the pipeline. It was a horizontal conspiracy and restraint of trade in the gas market. And the plaintiffs were both two classes of retail plaintiffs, core and non-core gas customers. And the Ninth Circuit ruled that the filed rate doctrine and preemption applied to bar the claims. It's not only that case. There are many other cases that were retail buyers. The T.E. Pastorino nursery case is such a case. Another case where the memorandum of opinion was written in which the court dismissed claims brought by retail, class of retail buyers, and that was also affirmed in a memorandum of opinion by this court. The same thing happened in the... by all this manipulation and fraud that went on in the marketplace. Do you deny that? Well, Watt Chain is seeking relief on the contract rate, the high contract rate from Pacific Corp, directly in state court and the PUC in Oregon. So that is the party that they sought relief for the supposedly excessive prices paid under their contract. They're also asserting remedy in the administrative proceedings at FERC, the Pacific Northwest Proceeding. They participated in the gaming proceeding and all the underlying proceedings, so they have sought relief in other places to get money. But the bottom line is whether or not there's a remedy in this court or not, the filed rate doctrine and federal preemption do apply to the claims raised in this case because it's very clear, and apropos of your questions, Judge Reimer, it's very, very clear if you look at this complaint that they are seeking damages based upon the idea, the notion that the wholesale prices charged by the defendants that were later reflected in the Cobb Index were too high. They are also asserting, and he argued today, that they have damages apart from. Let me respond. You call it consequential or you call it another category of damages. What is your response to that? My response to that is several fold. First of all, the concept of consequential damages is a breach of contract type of damages concept. And I think counsel was answering questions on the subject of amendment of how they would amend the complaint. It doesn't necessarily have to be called consequential damages. I suppose they could say your conduct injured me, not in terms of the price I had to pay, but it injured me in terms of the fact that I had to do all sorts of other things. It almost put me out of business, whatever. Well, I think, I think that, let me explain the amendment question first. With respect to consequential damages, the complaint does allege consequential damages in paragraph 39. So the amendment question, it's already there. But to answer your question, I think both federal preemption would apply to bar any claim of consequential damages under state law or any other law. Why, why would it, because what is your, what's your logic that the fact that the conduct was originally controlled by FERC means that any, any ripple effect from it is necessarily preempted? I mean, is that the heart of it? That's part of it. That would be certainly part of the logic. Because your clients could have conspired to put these folks out of business for whatever crazy reason, having nothing whatsoever to do with power sales. And certainly, just because you're in the energy business wouldn't rescue you. No. The scope of preemption is actually quite broad with respect to the wholesale power market transactions. And that's all that's alleged in this complaint against the defendants. It's sales and interstate commerce, wholesale power sales, and activities that relate to those wholesale power sales. And the filed rate doctrine not only applies to the price, but it applies to any rule, regulation, or practice affecting rates. And so that's a very broad scope of preemption and a very, very broad scope of the doctrine. But the last answer to your question is the bottom line is that whatever, call it whatever you want, the damages in this case asserted against the defendants would, in effect, have to come out of the filed rates. They'd be subtracted from the filed rates under the chair. Why is that true? Because the courts have never permitted an argument that says you can have it, you can take it out of a different pocket. It's Duke Energy's pocket. I mean, it's a company's pocket. And the pocket doesn't have different holes for, you know, it's just your pocket. And so if you committed some tort unrelated to pricing, it would still come out of your pocket. That doesn't mean that nobody could sue you for the tort, does it? Well, the concept of damages in the context of this case, first of all, the tortious interference claim is a pendant and supplemental jurisdiction claim, which is going to go down with the ship when the federal claims go down. And that's, there are many cases on that, including Tank. But the concept that I'm trying to express to the Court is that because the conduct we're talking about exclusively related to federal markets controlled by FERC, any such claim of consequential damages would have to be brought at FERC. And FERC would have jurisdiction under 306 of the Federal Power Act to entertain such a claim and other provisions of the Federal Power Act. I have a hard time still quite following the logic of that, because these folks didn't buy directly from you. Correct. But they're claiming, nevertheless, that there was a conspiracy and whatever to harm them. And they say they were harmed in several respects, one of which is the difference in price that they wrongfully paid. And assume that clearly is in FERC land. But they also say, you know, you caused me all sorts of other harm. I had to do X, Y, and Z that I can quantify if given a chance. I would answer that in a slightly different way, but repeating somewhat what I said before. And that is, the confines of the file rate doctrine and federal preemption relate to the substantive allegations of the complaint, not to the types of damages alleged. They bar any and all types of damages alleged by the. Why doesn't it logically just bar damages that have to do with what FERC regulates? FERC does not regulate your competitive, all of your competitive behavior, does it? FERC regulates all of the behavior that is identified in the complaint, all of which relates to wholesale power markets and all of which relates to interstate power transactions. Counsel, is what you're saying that all these damages, in fact, do hinge on these rates in effect? Is that what you're saying? What I'm suggesting is whatever damages, whatever you call it. Their consequential damages hinge on a claim that the rates were too high is what it comes to? Well, it hinges on a – and the bottom line would be that whatever damages they claim would be barred and they would in effect come out of our pocket and come out of our filed rates and reduce the filed rate received retroactively, which the Court can't do. So are you saying they have no remedy? There are other remedies, and I just suggested one a minute ago. 306 of the Power Act gives them the right to bring claims at FERC, and they've done that. They participated in the Pacific Northwest proceeding at FERC. They participated in the gaming proceeding at FERC. They have participated in approvals of the settlements on the order to show cause. What money did they get out of those proceedings? Well, none of them are final yet. The Northwest refund proceeding was heard by this Court in January, the appeal, and they're also seeking money against the seller, Pacificor, which I believe is going to go to trial, you're hearing, later this year, both in state court and at the PUC in the state of Oregon. Let me talk just for a few seconds about the retail contract. The retail contract has very little to do with this case. Almost all the allegations of complaint have to do with the wholesale market and interstate power sales. The only provision of that contract that's even alleged is the one paragraph that ties the price to the Wholesale Price Index. But this is not a breach of contract case. It is not founded on the contract. And, indeed, the retail aspect of this case is really of no significance with respect to the underlying claims of a preemption in the file rate doctrine. And I see I'm eating into Mr. Houlihan's time, and so I'll turn it over to him. Thank you. Thank you, Your Honors. Terry Houlihan for Reliant Energy Services. I had the pleasure of arguing the Lockyer v. Dinegy case and the Snohomish case, the Pastorino case, and the TransCanada case. And, therefore, I can say with some authority or at least confidence that the conduct described in this case is the same as the conduct described in those cases. If you look at the summary of the claims in the Stanislaus case, I'm sorry, in the Snohomish case, you'll find, which appears at 383 Fed Second at 759, you'll find that it's a fair summary of the allegations here. The Dinegy case involves specifically conduct with respect to ancillary services, also described in the complaint here at supplemental excerpts of record pages 6 through 8. So we're dealing with the same conduct. Is the impact the same? Does it matter that this is a retail contract? No. The Stanislaus decision, a decision of this court in which Judge Fernandez participated, was brought by retail buyers also who bought through PG&E, who bought from Pacific Gas Transmission, and FERC had jurisdiction in Stanislaus over the wholesale price at which PG&E bought from the transmission company. So that doesn't matter. What about the damage theory? I think that it's helpful if you think about the question in terms of antitrust injury. The Supreme Court in Square D explained that the filed-late doctrine is a form of antitrust injury, that if an element of your claim tries to challenge or assume something in a FERC-regulated market, then you can't show that antitrust injury has occurred because you can't assume what FERC would have done in that market. Here, regardless of the damage theory, a necessary element of the injury chain is to show impact in the market at the California-Oregon border, and according to the filed-late doctrine, you can't assume that. FERC has not adjusted California-Oregon border rates, and therefore you don't get to the further step of what happened at the retail, and you don't get to consequential damages because you're cut off by the need to show antitrust injury, and you can't do that. The injury, so to speak, stops at the border. Is it different in this case, as Hua Cheng argues and as Judge Reimer asked, because FERC has at least preliminarily established an adjustment in wholesale power prices in California in the spot markets? I think the answer to that is no for several reasons. The first is that if you think about it, Hua Cheng is essentially arguing that if FERC were to adjust a rate because of anti-competitive behavior, then plaintiffs would be free to tack on a treble damage claim to whatever price FERC ordered refunded, and clearly that's not the law. The filed-late doctrine is designed in part to protect FERC's jurisdiction over the appropriate remedy Well, I'm not sure that that doesn't entirely follow, does it? Because if FERC did adjust the rate, it is saying what the rate, reasonable rate was. So why couldn't somebody, why would somebody automatically precluded from piggybacking? Well, because the Supreme Court decided in ARCLA that you cannot add on to remedies that are available at FERC. Indeed, Arkansas-Louisiana Gas Company v. Hall is a similar case in the sense that that was the case that dealt with a favored-nations clause. And so you knew the favored-nations price. You knew in that case that the favored-nations price that the plaintiff was seeking was below the FERC ceiling price that had been set by FERC. Nonetheless, the Supreme Court said you can't speculate as to what FERC would do in that circumstance. And it also said that you can't supplement the remedy available from FERC. It was a situation in which FERC did not in those facts have the ability to retroactively adjust the contract rate. And the Court said even though that's the case, there's no State law remedy at contract for this violation. Consul, it's over the time, but let me ask you just one quick question. You mentioned a case in there. You said the Supreme Court said in blank. ARCLA? I still can't hear the word. ARCLA, A-R-K-L-A. Thank you. Which is Arkansas. I restated the full name. Arkansas, Louisiana Gas Company v. Powell. Yeah. I just couldn't hear the word. Thank you. I appreciate the time, Your Honor. And the opportunity to argue in what I think is the last of the civil energy cases arising from the energy crisis. Thank you. Rebuttal. One hopes. Thank you, Your Honor. A few quick points. FERC does not regulate the antitrust laws. And the gamut of FERC's regulation and jurisdiction is confined to wholesale transactions. All of the cases where my opponents have cited involved situations where the buyer and the seller were in a wholesale transaction. We believe that the Court should determine that the analysis in the Power Act's case is controlling here. In this case, the Court looked at the nature of the claims that the plaintiffs were making, not the conduct that occurred, and found that in Power Act, so that the claims could go forward despite the fact that there was a lawsuit. I'm missing some of your words. You dropped your voice. I'm sorry. It's the Power Act's case that we believe is controlling because it is the nature of the claims, not the nature of the conduct that controls whether or not this is a preemption situation. Because, again, the antitrust laws, these folks are not immune from the antitrust laws just because they're acting in wholesale markets. They have barred many people's claims because they've told, the courts have said, that those wholesale transactions are within the exclusive jurisdiction of FERC. Now, the Power Act's case found that in that situation they were outside of FERC's jurisdiction and that therefore the claims could go forward. The question here is not whether the wholesale power transactions were too high, because the court does not need to redetermine what these wholesale transactions were. We're not, we weren't a wholesale buyer and we weren't like in Stanislaus simply a retail buyer complaining that their wholesale were paid too much. But the price is the same. That's the rub. We understand that the hardest part about our case from the get-go is that because we chose to be in a retail situation that was tied to wholesale that we are in a very unique situation. But we are not. Well, you're in a pickle. I mean, is the problem. I mean, it's a pickle because it's the same price. And so how can you, I mean, I still have the same difficulty. How can you say it isn't? Well, we believe that if we prove the antitrust violations, that the court doesn't need to unravel all of these transactions like they would have had to in Snohomish or Grace Harbor, that if we prove antitrust violations occur, the damages can be calculated without unraveling the transactions. Either by borrowing the retail price that Pacific Quota Charges had our contract not been interfered with, addressing our consequential damages. And as Your Honor pointed out, there is the FERC mitigated clearing price that has been determined, and that could be borrowed. Now, we're not saying that's the only way to calculate damages, but it is one way. This Court must determine if this case is more like Power-X or more like Dinergy. And we believe that we're like Power-X because we are outside of the wholesale transactions. And as much as all of this would have fit had we been in a wholesale transaction, that we're not in that situation. We are in a retail situation where if we don't have antitrust remedies, we apparently have no remedies. And the law can't possibly be that if you choose an index like this, that no matter what the defendants do, they're immune from antitrust. You have other suits, have you? We have a claim before the Oregon Public Utility Commission and a county court in Oregon having to do with Pacific Corp, in which we've asked that the contract be reformed. We believe that in the event that we go forward with our claims, that there's no possibility of double recovery here, that anything that we would gain in any of these other proceedings would be offset against anything we would be entitled to in these proceedings. And that this notion of double recovery has really been more about in these plaintiff-defendant situations that have gone before us that a retail customer behind a wholesaler can't sue because the wholesaler could sue as well. And we're not in that situation. Pacific Corp isn't bringing these claims. Thank you, Your Honor. We appreciate it. Thank you very much. The court will recess until 9 a.m. tomorrow morning.
judges: Pregerson, Fernandez, Rymer